## WELLMAN *v.* THE STATE.

1. A plea in abatement to an indictment which alleges as a reason why the same should be quashed that a certain juror whose name appeared on the panel which found the indictment was not a competent juror because his name was not on the grand jury list "at the time the indictment was found," did not negative the fact that the juror's name was on the list either at the time the grand jury which found the indictment was drawn or at the time at which he was summoned as a grand juror, and was consequently properly stricken on demurrer.

2. The conviction resting on circumstantial evidence alone, and there being no proof of the corpus delicti and no evidence connecting the accused with the perpetration of the offense alleged to have been committed, the verdict is therefore contrary to law.

Submitted March 15,—Decided March 22, 1897.

Indictment for simple larceny. Before Judge Sweat. Camden superior court. October term, 1896.

*Alexander A. Lawrence*, for plaintiff in error.

*John W. Bennett, solicitor-general*, and *Toomer & Reynolds*, contra.

SIMMONS, Chief Justice.

1. Wellman was indicted and convicted of the offense of simple larceny. The indictment alleged that on the 21st of January, 1896, he "unlawfully, wrongfully and fraudulently did take and carry away" four hogs, the property of the prosecutor. Before his arraignment and plea, he filed a special plea in abatement to the indictment, upon the ground that "one of the grand jurors who found the indictment in said case was disqualified to serve as a grand juror, for the reason that his name is not among those who were on the qualified list of grand jurors for said county of Camden at the time said indictment was found." Upon motion this plea was stricken, and he excepted.

Under the provisions of section 815 of the Penal Code, the jury-boxes in the several counties of this State must be revised biennially, except in those counties which have an incorporated city of ten thousand inhabitants or more, where it must be done annually. The duty of the jury commissioners in revising the jury-boxes is to select upright and intelligent men to serve as jurors, and from the list so selected they must select not more than two fifths of the most experienced, upright and intelligent to serve on the grand jury. It is possible, indeed quite probable, that a person's name may be on the list of grand jurors for two years and then when the box is again revised his name may be left off of the grand jury list and put on the traverse jury list. Between the time when the judge, in accordance with the statute, draws the names of the grand jurors from the grand jury-box to serve at the next term of the court and the commencement of that term, the jury commissioners may have met and transferred one or more of the persons drawn to serve on the grand jury from the grand jury-box to that of the traverse jury. In such an event the person so drawn on the grand jury would not be disqualified to serve thereon, although his name may have been taken from the one box and placed in the other. He would still

be a competent and qualified grand juror. We think, therefore, that a plea in abatement to an indictment, on the ground that a certain person who served on the grand jury which found the indictment was not on the grand jury list "at the time the indictment was found," was properly stricken. The plea should have gone further and negatived the fact that his name was on the list when the grand jury was drawn, or it should allege that the person so serving on the grand jury was not regularly drawn but was summoned as a talesman, and that his name was not on the grand jury list when he was so summoned. There was therefore no error in striking the plea in abatement.

2. The accused was convicted on circumstantial testimony solely. The prosecutor testified that he had lost seven head of hogs; that they had ranged in a swamp four miles from his residence; that they were spotted hogs; that they were marked with a swallow-fork and under bit in one ear and a crop and under bit in the other ear; that at the time he lost the hogs he was among them two or three times a week; that the accused lived about four miles from his place; that he had never seen him anywhere about the hogs. Other witnesses testified that in January of the same year the accused brought to the city of Brunswick four hogs about the size of those described by the prosecutor; that in accordance with the city ordinance he registered the ear-marks of three of them but failed to register the marks of the fourth, for which failure he was arrested and fined in the police court; that the ear-marks of these hogs were the same as the marks of those described by the prosecutor, except that an upper bit in the right ear seems to have been cut and scorched, the scorching to give it the appearance of an old mark. It was also in evidence that accused owned hogs of his own, and that his mark was identical with the mark on the ears of the hogs which he had brought to the city of Brunswick. The larceny was alleged to have been committed in Camden county, some thirty miles from the

city of Brunswick in the county of Glynn. Under this state of facts, we think the court erred in refusing to grant a new trial. In the first place there is no sufficient proof of the corpus delicti. It is true the prosecutor testified that he lost or missed seven hogs from his drove, but he did not know whether they were stolen or not, and it was in the nature of things impossible for him to know it with sufficient certainty to testify to the fact of the larceny. The hogs ranged four miles from his residence, in an extensive swamp near a large river. He was among them two or three times a week, but it was impossible for him to say positively whether the missing hogs had been stolen, or were still in this large swamp, or had been killed by wild animals or alligators. The fact that the accused carried to the city of Brunswick four hogs with ear-marks similar to those of the prosecutor's hogs is not sufficient to connect him with the commission of the alleged larceny, especially as it appeared that he had hogs of his own which had the same ear-marks as those of the hogs claimed by the prosecutor.

*Judgment reversed. All the Justices concurring.*